UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

COLLENE MAE PILLOW,                                Case No. DK 11-11688
                                                   Hon. Scott W. Dales

          Debtor.

_____/

OPINION AND ORDER

PRESENT:     HONORABLE SCOTT W. DALES
             United States Bankruptcy Judge

Fifth Third Bank (the "Bank") filed a motion for an order relaxing the mortgage payment reporting requirements that would otherwise apply under Rule 3002.1(b) (the "Bank's Motion," DN 39).[1]   After the notice period under LBR 9013(c)(2) passed without objection, the court entered its order granting the Bank's Motion under Rule 9006 (the "Order," DN 42).  The United States Trustee ("UST") timely filed a motion for reconsideration of the Order pursuant to Rule 9024 (the "UST's Motion," DN 43), arguing that the UST did not receive notice of the Bank's Motion, and challenging the court's authority to modify the reporting requirements under Rule 3002.1.  Although not a party with a financial stake in this case, the UST has statutory authority to raise and be heard on any issue.[2]   Therefore, the court announced its intention at the March 6, 2013 hearing to reconsider the Order and review the Bank's Motion *de novo,* keeping in mind the UST's position.

---

[1] In this Opinion and Order, each reference to a "Rule" or "the rules" is a reference to one or more of the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

[2] *See* 11 U.S.C. § 307.  The docket in this matter establishes that the Bank did not serve the Bank's Motion upon the UST, contrary to the representation in the applicable certificate of service.  The Bank evidently assumed, incorrectly, that the UST receives electronic service in all cases.  By local rule, however, there is no general, mandatory service on the UST in chapter 13 cases.  *See* LBR 5005-3.  Given the volume of cases, automatic, electronic service on the UST would impose a substantial burden on his office.

After reviewing the authorities that the parties called to the court's attention and considering the arguments advanced during the March 6, 2013 hearing, the court stands by its original decision to relax the reporting requirements under the circumstances of this case, with a minor revision described below.

## I.  JURISDICTION

The court has jurisdiction over the chapter 13 bankruptcy case of Collene Mae Pillow (the "Debtor") pursuant to 28 U.S.C. § 1334(a), and the case and this contested matter have been referred to the bankruptcy court under LCivR. 83.2(a) (W.D. Mich.) and 28 U.S.C. §157(a).  The contested matter concerns the administration of the case, and is therefore a "core" proceeding.  28 U.S.C. § 157(b)(2)(A).

## II.  ANALYSIS

In their papers and again during oral argument, the parties referred the court to Rule 3002.1 and Rule 9006.  They agree that the Bank holds a claim falling within the ambit of Rule 3002.1 because it is secured by the Debtor's principal residence and the Debtor has provided for the claim under 11 U.S.C. § 1322(b)(5).  *See* Fed. R. Bankr. P. 3002.1(a).  As a result, the parties agree that the Bank is subject to the reporting obligations prescribed in Rule 3002.1(b).  Accordingly, without the relief granted in the Order, the Bank would be obligated to file a notice of payment change every month, and do so no later than twenty-one days before the payment change takes effect.  The UST, however, does not agree that Rule 9006 authorizes the court to modify the twenty-one day notice requirement under Rule 3002.1(b) as the court did in the Order.  At oral argument, the UST's counsel suggested that extending the deadline to file the reports in response to the Bank's Motion "is a different animal" than the enlargement

contemplated under Rule 9006, and effectively re-writes Rule 3002.1(b).  *See* Transcript of hearing held March 6, 2013 ("Tr.") at 14:23.

By way of background, the Bank's claim arises from a home equity line of credit ("HELOC") which is a revolving or "open end" credit arrangement secured by residential real estate.  *See* Bank's Motion at Exh. A.  Under the loan documents, the interest rate on the HELOC, and therefore the Debtor's payment obligation, changes monthly, though not necessarily dramatically.  More specifically, as the Wall Street Journal's published "Prime Rate" fluctuates on "the business day immediately preceding the first business day of each month," the Debtor's payment obligation changes.  *See* Bank's Motion at Exh. A (Equity Flexline Credit Agreement, Security Agreement and Federal Truth in Lending Initial Disclosure at ¶ 8).  Every time the payment changes, regardless of the frequency, the Bank concedes it is obligated to give notice of this change to the Debtor, her lawyer and the chapter 13 trustee.  The applicable rule provides as follows:

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

Fed. R. Bankr. P. 3002.1(b).  Under the circumstances of this case, the Bank would have approximately nine days to calculate the payment change and communicate that information to counsel in time for counsel to prepare and file the payment change notice with the court no later than twenty-one days before the change takes effect in the next billing cycle.  This is an exceedingly small window.

The Advisory Committee Note to this relatively new rule explains the drafters' purpose in imposing the notification requirements:

> In order to be able to fulfill the [cure and maintain] obligations of § 1322(b)(5), a debtor and the trustee have to be informed of the exact amount needed to cure any prepetition arrearage, *see* Rule 3001(c)(2), and the amount of the postpetition payment obligations. If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust postpetition mortgage payments to cover any undisputed claimed adjustment.

*See* Fed. R. Bankr. P. 3002.1 (Advisory Committee Note (2011)). Ultimately, the drafters hoped that by requiring lenders to give periodic notice of payment changes, debtors could avoid the shock that some have experienced at the end of their plan terms upon discovering that, despite having made all payments in good faith, their mortgage arrears quietly grew -- in some instances, substantially. The culprits usually were tax and insurance escrow changes, interest rate adjustments, late payments, appraisal fees, and collection costs. Some debtors who complied with their plan obligations and received a chapter 13 discharge nevertheless found themselves facing foreclosure because they were not aware that their plan payments were inadequate to cure and maintain the very defaults and obligations that prompted them to seek bankruptcy protection in the first place. Rule 3002.1 addresses this problem in several ways, principally by requiring periodic disclosures. Like all rules, Rule 3002.1 imposes burdens on the parties in interest, including residential mortgage lenders.

Citing the "unique burden" that the rule imposes on it as the holder of a HELOC loan with frequent payment adjustments, the Bank filed its motion seeking relief from what would, in effect, amount to giving monthly notices. In place of the requirement to report payment changes not later than twenty-one days before the change takes effect, the Bank proposed, and the court

approved, a six month reporting interval, citing its authority to enlarge deadlines under Rule 9006. *See* Order at (unnumbered) ¶¶ 3 and 5.[3]

At the March 6, 2013, hearing, counsel for the UST argued that the Bank has in fact filed two notices under Rule 3002.1, contradicting the Bank's argument that the notification requirements are "virtually impossible" to meet. *See* Bank's Motion at p. 4 (supporting brief at p. 2). Putting aside the Bank's hyperbole, however, the thrust of its argument is that giving notice is impractical. Stated differently, the Bank argues that giving notice every month for *de minimis* changes is burdensome, taking into account the purpose of Rule 3002.1.

Moreover, the Bank's notices, filed after the UST filed its motion, actually fortify the Bank's contention that the requirement is burdensome: the Bank's first notice shows that between January and February, the monthly payment changed from $117.72 to $120.40 -- a mere $2.68. At the hearing, Bank's counsel stated without contradiction that in other months the payment has changed by as little as thirty-two cents. *See* Tr. at 9:25. Giving monthly notice of these small changes does not materially advance the purpose of Rule 3002.1, which (as noted above) is to permit debtors to "cure and maintain" under § 1322(b)(5) during their bankruptcies, and avoid unhappy surprises when their plan terms come to an end.

In addition, the clerical and legal expenses associated with preparing, filing, and serving monthly payment change notices for nominal or negative adjustments support the Bank's position that the notice requirement imposes a "unique burden" in this particular case. During the hearing, despite concurring in the UST's Motion, counsel for the chapter 13 trustee (the "Trustee") nevertheless stated that the Bank's monthly reporting would impose a burden on his client. *See* Tr. at 12:3 (acknowledging burden on the Bank, and noting that the reporting is "also

---

[3] Artlessly and somewhat inconsistently, the Order purported to "excuse" the Bank from the notice requirement of Rule 3002.1. Fairly construed, rather than excusing the Bank from giving notice of payment changes under the rule, the Order substituted a six month reporting interval for each monthly period that otherwise would apply.

really burdensome on the trustee"). Furthermore, under most consumer loan documents, including the HELOC documents in this case, the borrower is ultimately responsible for the lender's collection costs. *See* Bank's Motion at Exh. A, ¶¶ 22-23. In other words, for HELOC loans like this one with foreseeably modest monthly payment changes, the creditors, debtors, and trustees will bear the cost of compliance with Rule 3002.1. Significantly, none of these parties opposed the Bank's Motion, at least not initially.[4] It seems safe to assume that the lender who incurs collection costs for complying with Rule 3002.1(b) will seek to pass along the costs to the borrower under the loan documents. If so, Rule 3002.1(c) will require the lender to give another notice within 180 days after incurring the expense. Assuming monthly payment adjustments lead to monthly notices (and monthly charges), in six months the lender will be giving two monthly notices, one under Rule 3002.1(b) for the interest rate change, and one under rule 3002.1(c) for the cost of giving the first monthly notice. Over a five year plan period, a debtor could be required to pay substantial additional collection costs to compensate her HELOC lender for giving notice of payment changes in the range of $1.00-$3.00 per month, all in the name of transparency. Enlarging the reporting periods under Rule 9006 mitigates the burden and expense of complying with the time periods that would otherwise apply under Rule 3002.1(b) and (c).

In its Motion, the Bank cited general orders from bankruptcy courts in other districts that attempt to address the problem of revolving or open-end credit agreements and postpetition arrears. It also cited Rule 9006, governing calculation of, and relief from, various time periods in bankruptcy cases.

---

[4] Indeed, the Trustee has agreed in at least one other case to substitute a six month interval for the twenty-one day notice that otherwise would apply. *See* Stipulation Resolving Creditor Fifth Third Bank's Motion to Be Excused from Filing a Notice of Payment Change (DN 33) at ¶ 2, filed May 23, 2012 in *In re Prestly*, Case No. 10-13560-SWD.

The court does not regard the Bank's citation to other courts' general orders as particularly persuasive because the orders do not apply in this district and, in any event, have generally been abrogated.  At most, they show that these courts have attempted to create disclosure obligations without the burdens that Rule 3002.1(b) imposes on HELOC lenders. Even if the general orders were not abrogated by the courts themselves, Rule 9029 does not permit any court to modify any national rule.  Because of this limitation, the court is more receptive to the Bank's reliance on Rule 9006 and the "case by case" safety-valve provided under that rule.

Specifically, Rule 9006(b) grants the court authority to enlarge deadlines prescribed in the rules or by court order, subject to enumerated exceptions or conditions:

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).  The court notes that paragraphs (2) and (3) of Rule 9006(b) do not mention Rule 3002.1, and therefore the relief that Rule 9006 affords may apply to the time periods prescribed in Rule 3002.1.

Moreover, the language in Rule 9006 is inescapably broad and flexible, using such phrases as "at any time," "in its discretion," "with or without a motion," and "for cause."  These phrases echo other signals in the rules directing the court to apply the rules in a practical way to secure the "just, speedy, and inexpensive determination of every case and proceeding."  Fed. R. Bankr. P. 1001.

Viewing the Bank's Motion through the lens of Rule 9006, giving twenty-one days advance notice of payment changes under Rule 3002.1(b) is an act "required . . . to be done at or within a specified period by these rules or by a notice given thereunder," and therefore within the scope of Rule 9006(b)(1). The Bank sought relief from this time period by filing a motion, and as "cause" articulated the "unique burden" associated with the twenty-one day period, given the nature of the HELOC loan with its nominal but monthly interest rate adjustment. In response to the motion, which drew no objection from the only parties with a concrete stake in the matter and the only parties entitled under the rules to notice of payment changes,[5] the court entered its Order relaxing the reporting requirements, concluding that the Bank's Motion established cause to modify the twenty-one day period in this case under Rule 9006(b).

The UST, however, takes a different view, arguing that Rule 9006 does not authorize the court to modify the reporting requirements of Rule 3002.1. The court respectfully disagrees. In its Order, the court did not intend to excuse the Bank from reporting, but simply modified the deadlines for doing so, after taking into account the cause associated with HELOC loans. The UST's citation to *In re Adkins,* 477 B.R. 71, 74 (Bankr. N.D. Ohio 2012), is not particularly instructive. The court does not quarrel with that decision to the extent it stands for the proposition that Rule 3002.1 itself provides no safety valve to address burdensome or impractical application. The *Adkins* court, however, did not consider whether another rule, such as Rule 9006, might provide relief.

As for Judge Gregg's bench ruling in another case withholding similar relief,[6] the UST's citation to the resulting order is similarly unpersuasive. First, without the benefit of the

---

[5] Rule 3002.1 requires the Bank to notify the Trustee and the Debtor; the rule omits the UST, for practical reasons. *See also* LBR 5005-3 (Service of Documents on the United States Trustee).

[6] *In re May,* Case No. 12-07004-JDG.

transcript of the oral ruling, the court cannot determine what factors influenced the decision. Second, the court doubts that Judge Gregg intended his oral ruling on this new and important issue to have precedential effect, at least not before he issues a published opinion setting forth his reasoning. The court hesitates to rely on Judge Gregg's unwritten ruling in *May,* and doubts that he intended it as the last word on this issue in our district.

On reconsideration, the court recognizes that it might have done a better job of balancing the burdens the Bank described against the concerns the UST expressed in his motion (and that motivated the drafters of Rule 3002.1(b)), namely preventing the Debtor from unwittingly falling way behind on her mortgage debt. Although the court doubts that there will be significant payment changes resulting from the interest rate adjustments under the HELOC in this case, there may nevertheless be payment changes that the Debtor will need time to account for before exiting bankruptcy. Therefore, the court will adhere to its decision to permit six month reporting intervals, but will require quarterly reporting in the last year of the Debtor's plan term. This should give the Debtor ample time to address the impact of any modest payment changes before she concludes her case. Moreover, if developments in the case persuade the Debtor or the Trustee that cause exists to revisit the reporting interval, the court will consider readjusting the period in response to a motion under Rule 9006.

### III.  CONCLUSION AND ORDER

If the drafters of the rules intended to make the twenty-one day time period impregnable, they could have included Rule 3002.1 among the rules listed in Rule 9006(b)(2) or (b)(3). They did not. Until the parties devise a practical solution,[7] or the Supreme Court includes a safety

---

[7] Modifying the twenty-one day period is not the only possible solution to the problem. It is conceivable, for example, that the Bank and the Debtor might mitigate the hardships imposed by the rule by agreeing to modify the payment provisions of the HELOC. The court, however, does not have the authority to order the modification, nor may the Supreme Court "abridge, enlarge, or modify any substantive right" of the Bank by promulgating any rule,

valve within Rule 3002.1 itself,[8] or excludes the new rule from the scope of Rule 9006, the court will continue to apply Rule 9006 to motions seeking relief from the time periods under Rule 3002.1, insisting each time, of course, that the movant establish cause.  The UST's position gives too little weight to the court's authority under Rules 1001 and 9006(b) and the finding of cause in the context of this case involving the inevitably frequent and predictably modest payment changes associated with the HELOC loan.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.     The UST's Motion (DN 43) is GRANTED only to the extent it seeks reconsideration, and on reconsideration, the court's Order (DN 42) is VACATED;

2.     The Trustee's concurrence (DN 51), to the extent it requests relief, is DENIED;

3.     The Bank's Motion (DN 39) is GRANTED as provided herein:

   a.     The Trustee shall continue to pay the monthly amount indicated in the Bank' last payment change notice and notices filed thereafter; and

   b.     The Bank shall file a notice of payment change on or about the date that is six months after entry of the last payment change notice, and every six months thereafter, provided, however, that during the last year of the Debtor's plan, the Bank shall file quarterly notices of any payment changes.

---

including Rule 3002.1.  *See* 28 U.S.C. § 2075; *cf.* 11 U.S.C. § 1322(b)(2).  Nothing in this Opinion and Order modifies the rights or obligations of the Bank or the Debtor under their loan documents.

[8]Inserting the phrase "Unless the court, for cause, orders otherwise," at the beginning of Rule 3002.1(b) would probably suffice.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor, Debtor's counsel, Panayiotis Marselis, Esq., Dean T. Rietberg, Esq., and Manish Joshi, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated March 18, 2013**



Scott W. Dales
United States Bankruptcy Judge